*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VHS OF MICHIGAN, INC., doing business as
DETROIT MEDICAL CENTER,

      Plaintiff-Appellant,

v

MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY, MICHIGAN
ASSIGNED CLAIMS PLAN, and CURRENTLY
UNNAMED ASSIGNEE OF THE MICHIGAN
ASSIGNED CLAIMS PLAN,

      Defendants,

and

USA UNDERWRITERS INSURANCE
COMPANY,

      Defendant-Appellee.

UNPUBLISHED
August 07, 2026
9:16 AM

No. 375886
Wayne Circuit Court
LC No. 22-001462-NF

Before: ACKERMAN, P.J., and BAZZI and LIEVENSE, JJ.

PER CURIAM.

In this no-fault action, plaintiff, VHS of Michigan, Inc., doing business as Detroit Medical Center (DMC), appeals as of right the trial court's stipulated order regarding apportionment and to dismiss the consolidated litigation. However, DMC substantially challenges the trial court's previous order granting summary disposition in part to defendant, USA Underwriters Insurance Company (USA), under MCR 2.116(C)(10) (no genuine issue of material fact), and the trial court's prior opinion and order denying DMC's motion for reconsideration. We affirm.

-1-

## I. BASIC FACTS AND PROCEDURAL HISTORY

The pertinent facts were previously summarized in part by this Court in *Downer v USA Underwriters*, unpublished per curiam opinion of the Court of Appeals, issued May 30, 2024 (Docket Nos. 363824; 363831; 366081), pp 3-4:

> On March 16, 2021, [Angerica L. Downer] applied for a no-fault automobile insurance policy from USA. On the application form, Downer checked "No" in response to the question, "In the past three (3) years, have you . . . had your driver's license suspended or revoked?" However, Downer's driver's license was suspended from October 19, 2018 until December 6, 2018. Downer also elected [personal protection insurance (PIP)] benefits at a coverage limit of $50,000, but this option is available only to individuals who are enrolled in Medicaid, MCL 500.3107c(1)(a). Downer was not enrolled in Medicaid at the time she submitted her application. USA issued the policy without discovering that Downer had provided incorrect information in her application.
>
> On May 12, 2021, Downer was injured in an automobile accident with another driver, Nakaylin Ashburn. DMC treated Downer for her injuries and submitted bills to USA for reimbursement under Downer's no-fault policy. On May 24, 2021, USA obtained Downer's driving record and discovered her previous driver's license suspension. On July 16, 2021, USA informed Downer that her insurance policy was being rescinded *ab initio*, as of the date it was issued. Downer subsequently brought suit against USA, Ashburn, and the [Michigan Automobile Insurance Placement Facility (MAIPF)]. DMC brought a separate provider's action against USA under MCL 500.3112(1). The trial court consolidated the two actions.
>
> * * *
>
> DMC moved for partial summary disposition under MCR 2.116(C)(10) on the issue of the applicable coverage limit for Downer's PIP benefits. DMC argued that Downer chose a benefit limit of $50,000, which was only available to Medicaid enrollees, but Downer was not a Medicaid enrollee. DMC argued that the policy should be regarded as providing for unlimited PIP benefits under MCL 500.3107c(4). USA argued that the court should apply a rebuttable presumption that $50,000 was the correct level under MCL 500.3107c(3). The trial court denied DMC's motion. DMC now appeals that decision by leave granted in Docket No. 366081.

Ultimately, as relevant in the present case, this Court held that "the trial court correctly concluded that the rebuttable presumption provided by MCL 500.3107c(3) can apply to an insurer who issued a policy with a $50,000 coverage limit under MCL 500.3107(1)(a) to an insured who did not meet the statutory eligibility requirements for that level of coverage." *Id*. at 16. But the *Downer* Court agreed with DMC that USA failed to properly establish its rebuttable presumption pursuant to *Bronson Health Care Group*, *Inc v Esurance Prop & Cas Ins Co*, 348 Mich App 428; 19 NW3d 151 (2023), because USA did not provide an affidavit to demonstrate that Downer submitted a premium payment corresponding to the $50,000 coverage level. *Downer*, unpub op at 15.

Accordingly, this Court remanded the matter to provide USA with the opportunity to submit an adequate affidavit, noting that if it "satisfies the prima facie case of a presumption, DMC will then have the opportunity to rebut the presumption as described in *Bronson* . . . ." *Id*. at 15-16.

On remand from *Downer*, USA moved for partial summary disposition under MCR 2.116(C)(10) regarding the PIP policy-limit issue, contending that the provided affidavit of Takara Thompkins, a USA underwriting specialist, established the rebuttable presumption of MCL 500.3107c(3). USA asserted that Thompkins's affidavit demonstrated: (1) USA issued an insurance policy to Downer; (2) Downer did not make an effective selection because she was not enrolled in Medicaid at the time of selection; and (3) Downer advanced premium payments consistent with a $50,000 coverage level. USA further argued that Thompkins's affidavit detailed how the premium payment amount would differ if a different coverage level were selected, such as a $250,000 or $500,000 PIP policy. USA concluded that it was entitled to summary disposition because it established the rebuttable presumption pursuant to MCL 500.3107c(3), *Bronson*, and *Downer*.

DMC responded that both *Bronson* and *Downer* improperly interpreted MCL 500.3107c(3) by failing to construe the statute as a whole, instead dismissing any argument for a holistic reading as policy-based rather than examining Subsection (3) in conjunction with Subsection (4) to give effect to the statutory scheme. DMC further contended that USA failed to establish the rebuttable presumption under MCL 500.3107c(3) because Thompkins's affidavit was inadequate under MCR 2.119(B)(1). DMC asserted that Thompkins did not explicitly state in her affidavit that she maintained personal knowledge of USA's policy-setting process, such that she would be qualified to testify regarding how different premium payments correspond to different coverage levels. DMC advanced that Thompkins's deposition testimony featured similar flaws regarding her expertise.

Following a hearing, the trial court granted summary disposition on the PIP policy-limit issue under MCR 2.116(C)(10), opining, "I think it's quite clear that USA has established its rebuttable presumption under *Bronson* that Downer made the premium payment corresponding to the $50,000 coverage, regardless of the issue of her Medicaid card." The trial court further explained:

> USA laid out pretty thoroughly in [its] motion how [Downer's] premium payment corresponded to the $50,000 coverage. I don't think that's disputable at all.
>
> The issue is whether the affidavit [USA] provided is satisfactory in establishing a prima facie case of presumption. DMC has attempted to rebut the presumption by arguing that the affidavit is hearsay and that it was made or signed by someone other than [the insurer] who took the initial information. But USA has provided a copy of the Medicaid card and I'm satisfied that [USA] met [its] burden.

The court entered an order consistent with its statements on the record.

DMC moved for reconsideration of the summary disposition order, reiterating its arguments regarding the inadequacy of Thompkins's affidavit under MCR 2.119(B)(1) and the

lack of documentation establishing the premium payment rate for a $50,000 PIP policy. The trial court entered an opinion and order denying DMC's motion, resolving that DMC failed to identify any palpable error or novel argument warranting reconsideration of the contested order. Following further proceedings, the court entered a stipulated order regarding apportionment and to dismiss the consolidated litigation. This appeal ensued.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *Id*. at 160 (emphasis omitted).

> When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*Id*. (quotation marks and citations omitted).]

This Court further reviews de novo whether the trial court properly interpreted and applied the relevant statutes and court rules. *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012).

## III. ANALYSIS

DMC argues that the rebuttable presumption under MCL 500.3107c(3) is inapplicable because the statute does not address circumstances in which a selection of coverage is ineffective due to the insured's statutory ineligibility to make that selection. Because of the law-of-the-case doctrine, we disagree.

"The law-of-the-case doctrine is a judicially created, self-imposed restraint designed to promote consistency throughout the life of a lawsuit." *Rott v Rott*, 508 Mich 274, 286; 972 NW2d 789 (2021). Pursuant to this doctrine, legal matters "determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same." *Grievance Admin v Lopatin*, 462 Mich 235, 259; 612 NW2d 120 (2000) (quotation marks and citation omitted). "Thus, as a general rule, an appellate court's determination of an issue in a case binds lower tribunals on remand and the appellate court in subsequent appeals." *Id*. at 260.

Despite DMC's contentions to the contrary, its arguments pertaining to the applicability of MCL 500.3107c(3) were previously addressed by this Court, and the facts remain materially the same as in the previous appeal. In *Downer*, unpub op at 10-12, this Court examined whether Downer was entitled to unlimited PIP coverage under her policy with USA when she selected the $50,000 coverage option in her application despite her inability to elect that option because she was not enrolled in Medicaid. This Court considered MCL 500.3107c, which provides, in pertinent part:

> (1) Except as provided in sections 3107d and 3109a, and subject to subsection (5), for an insurance policy that provides the security required under

-4-

section 3101(1) and is issued or renewed after July 1, 2020, the applicant or named insured shall, in a way required under section 3107e and on a form approved by the director, select 1 of the following coverage levels for personal protection insurance benefits under section 3107(1)(a):

(a) A limit of $50,000.00 per individual per loss occurrence for any personal protection insurance benefits under section 3107(1)(a). The selection of a limit under this subdivision is only available to an applicant or named insured if both of the following apply:

(*i*) The applicant or named insured is enrolled in Medicaid, as that term is defined in section 3157.

(*ii*) The applicant's or named insured's spouse and any relative of either who resides in the same household has qualified health coverage, as that term is defined in section 3107d, is enrolled in Medicaid, or has coverage for the payment of benefits under section 3107(1)(a) from an insurer that provides the security required by section 3101(1).

(b) A limit of $250,000.00 per individual per loss occurrence for any personal protection insurance benefits under section 3107(1)(a).

(c) A limit of $500,000.00 per individual per loss occurrence for any personal protection insurance benefits under section 3107(1)(a).

(d) No limit for personal protection insurance benefits under section 3107(1)(a).

(2) The form required under subsection (1) must do all of the following:

(a) State, in a conspicuous manner, the benefits and risks associated with each coverage option.

(b) Provide a way for the applicant or named insured to mark the form to acknowledge that he or she has read the form and understands the options available.

(c) Allow the applicant or named insured to mark the form to make the selection of coverage level under subsection (1).

(d) Require the applicant or named insured to sign the form.

(3) If an insurance policy is issued or renewed as described in subsection (1) and the applicant or named insured has not made an effective selection under subsection (1) but a premium or premium installment has been paid, there is a rebuttable presumption that the amount of the premium or installment paid accurately reflects the level of coverage applicable to the policy under subsection (1).

(4) If an insurance policy is issued or renewed as described in subsection (1), the applicant or named insured has not made an effective selection under subsection (1), and a presumption under subsection (3) does not apply, subsection (1)(d) applies to the policy.

(5) The coverage level selected under subsection (1) applies to the named insured, the named insured's spouse, and a relative of either domiciled in the same household, and any other person with a right to claim personal protection insurance benefits under the policy.

The *Downer* Court recognized that MCL 500.3107c(1) permitted an insured to choose unlimited PIP coverage, or coverage limited to $50,000, $250,000, or $500,000, and provided that the $50,000 option was solely available to insureds who are enrolled in Medicaid and meet other eligibility requirements. *Downer*, unpub op at 12. This Court noted that the parties did not dispute that Downer was not enrolled in Medicaid when she submitted her application, and that the statute "does not specify how an insurer is to verify an insured's Medicaid enrollment." *Id*. However, the Court explained:

MCL 500.3107c(3)[1] provides a rebuttable presumption for cases where an insured "has not made an effective selection" from the PIP coverage options, but the named insured paid a premium or premium installment. The statute creates a rebuttable presumption that the amount of the premium "accurately reflects the level of coverage applicable." If the presumption under Subsection (3) does not apply, MCL 500.3107c(4) provides that the unlimited coverage option applies. [*Id*.]

In addressing the proper interpretation of the phrase "has not made an effective selection" under MCL 500.3107c(3), this Court considered "how the $50,000 limit in Subsection (1)(a) is distinct from the levels offered in Subsections (1)(b) through (d)," as "the options of a $250,000 limit, a $500,000 limit, or unlimited coverage are available to all insureds, but the $50,000 limit is only available to insureds who satisfy certain enumerated eligibility requirements." *Id*. But the Court opined that "MCL 500.3107c(3) and (4) do not distinguish between an 'effective selection' of the $50,000 option from the other available options," such that DMC's construction "improperly reads into the statute a distinction not expressed by the statutory language," and "also shifts to USA the consequences of Downer's improper selection on the ground that USA could have discovered the error if it had verified Downer's Medicaid enrollment before issuing her a policy with a $50,000 coverage limit under Subsection (1)(a)." *Id*.

---

[1] MCL 500.3107c(3) states:

If an insurance policy is issued or renewed as described in subsection (1) and the applicant or named insured has not made an effective selection under subsection (1) but a premium or premium installment has been paid, there is a rebuttable presumption that the amount of the premium or installment paid accurately reflects the level of coverage applicable to the policy under subsection (1).

-6-

The *Downer* Court further opined that DMC's interpretation of the statute was contradicted by this Court's decision in *Bronson*, which provided that " 'the Legislature intended for MCL 500.3107c(3) to apply to any situation in which MCL 500.3107c(1) was not followed to the letter . . . but the parties to the policy nevertheless had an apparent understanding about the level of coverage.' " *Downer*, unpub op at 15, quoting *Bronson*, 348 Mich App at 448-449.  The Court acknowledged that the matter was distinguishable from *Bronson* because "Downer was not a Medicaid enrollee eligible for the $50,000 coverage option when she applied for auto insurance," but it resolved that DMC's construction would "require reading into the statute a distinction that the Legislature could have, but did not, include in the statute." *Downer*, unpub op at 15.

This Court then addressed DMC's contention that if it were to adopt USA's interpretation, "the default unlimited coverage provision in MCL 500.3107c(4) will never apply as a practical matter because an insurer will not issue a policy without receiving at least one premium payment," and that "reliance on the premium payment to determine the applicable coverage limit as prescribed in MCL 500.3107c(3) violates the principle of statutory interpretation by rendering MCL 500.3107c(4) meaningless and nugatory." *Id*.  The Court explained that the argument "that insurance companies could disregard the safeguards of MCL 500.3107c(2), allowing insureds to make uninformed choices, but avoid the consequences provided by MCL 500.3107c(4) because the rebuttable presumption under MCL 500.3107c(3) will automatically become available when the uninformed insured pays the premium or premium installment" was also considered in *Bronson*. *Id*. at 15.  The *Downer* Court resolved that, much like in *Bronson*, such policy concerns belonged to the Legislature and were speculative, and an insurer acting in such a manner was unlikely to operate in Michigan for long.  *Id*.  This Court, however, agreed with DMC that USA failed to properly establish its rebuttable presumption pursuant to *Bronson* because USA did not provide an affidavit to demonstrate that Downer submitted a premium payment corresponding to the $50,000 coverage level.  *Id*.  Accordingly, this Court remanded the matter to provide USA with the opportunity to submit an adequate affidavit, noting that if it "satisfies the prima facie case of a presumption, DMC will then have the opportunity to rebut the presumption as described in *Bronson* . . . . " *Id*. at 15-16.

As discussed above, the *Downer* Court expressly held that MCL 500.3107c(3) applied and remanded the case for further proceedings to determine whether the rebuttable presumption had been sufficiently established and, if so, whether it had been rebutted.  Although DMC contends that *Downer* was wrongly decided in light of this Court's subsequent decision in *Northland Radiology*, *Inc v Allstate Fire and Cas Ins Co*, ___ Mich App ___; ___ NW3d ___ (2026) (Docket No. 374214), the two cases address distinct statutory issues.  In *Northland Radiology*, ___ Mich App at ___; slip op at 7-9, this Court held that an applicant or named insured cannot make an effective selection to opt out of PIP benefits unless all eligibility requirements set forth in MCL 500.3107d are satisfied, in which case MCL 500.3107c(1)(d) governs.  *Downer*, by contrast, addressed the separate question of whether the rebuttable presumption under MCL 500.3107c(3) applies when an applicant or named insured " 'has not made an effective selection' from the PIP coverage options, but the named insured paid a premium or premium installment.' " *Downer*, unpub op at 10-16.  As *Northland Radiology* itself recognized, MCL 500.3107c includes a rebuttable presumption in Subsection (3) that is absent from MCL 500.3107d, noting, "The Legislature could have included similar language in MCL 500.3107d, but it did not." *Northland Radiology*, ___ Mich App at ___; slip op at 8.  That presumption precludes the automatic application of the unlimited PIP benefits otherwise available under MCL 500.3107c(1)(d) when

an applicant or named insured, such as Downer, makes an ineffective selection. Accordingly, *Northland Radiology* does not undermine *Downer*'s conclusion that the rebuttable presumption of MCL 500.3107c(3) remains applicable in these circumstances. Ultimately, despite DMC's attempt to now relitigate the issue in this appeal, the law-of-the-case doctrine governs, and DMC has failed to show any grounds that would justify disregarding it.

DMC then argues that even if the rebuttable presumption of MCL 500.3107c(3) applies, USA failed to establish the presumption because its affidavit was legally deficient under MCR 2.119(B)(1). We disagree.

MCR 2.116(G)(6) provides that an affidavit submitted in support of or in opposition to a motion for summary disposition "shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion." MCR 2.119(B)(1) governs the form of affidavits submitted to a court, providing that such affidavits must: "(a) be made on personal knowledge; (b) state with particularity facts admissible as evidence establishing or denying the grounds stated in the motion; and (c) show affirmatively that the affiant, if sworn as a witness, can testify competently to the facts stated in the affidavit." Such an affidavit must include an oath or affirmation of the person who has knowledge of the facts stated. See MCR 1.109(D)(3); MCR 2.116(G)(4).

In her affidavit, Thompkins attested that she was an underwriting specialist employed by USA, and she was assigned to review the insurance application and payment history for Downer. Thompkins asserted that on March 16, 2021, Downer applied for, and was issued, a $50,000 PIP policy with USA, based on Downer's purported enrollment in Medicaid. Thompkins stated that Downer opted for a six-month installment plan with a minimum payment of $228.88 per month, in addition to a $228.88 down payment and a separate $150 "Complete Protection Program membership." Thompkins further asserted that USA "re-rated Downer's policy premium" to demonstrate the differing six-month premium for a $250,000, $500,000, and an unlimited PIP policy; a $250,000 PIP policy would warrant a $1,625 premium, a $500,000 PIP policy would result in a $1,919 premium, and an unlimited PIP policy would require a $2,310 premium. Thompkins provided, "I swear that the contents in my affidavit are truthful under the penalty of perjury," and the affidavit was notarized.

Although Thompkins did not expressly state in the affidavit that the assertions therein were based on personal knowledge, she explained at the outset that she was an underwriting specialist for USA and had been assigned to review Downer's application and payment history. Thompkins's statements regarding those matters logically flowed from the review she was assigned to conduct, making it apparent that the affidavit was based on her personal knowledge. Moreover, Thompkins affirmed under the penalty of perjury that the statements contained in the affidavit were true, further supporting the reliability of her assertions. Additionally, the affidavit cited and attached several supporting documents substantiating Thompkins's contentions regarding Downer's enrollment in the $50,000 PIP policy, as well as the comparative premium rates for policies providing $250,000, $500,000, and unlimited PIP coverage. These exhibits included Downer's insurance policy application with USA, her Medicaid card, the client quote disclosure and payment schedule, payment receipts, and an "MMR Quote Calculator" reflecting the premium amounts associated with the various available PIP coverage limits. DMC likewise fails to establish how Thompkins's deposition testimony is inconsistent with, or otherwise negates,

her personal knowledge of the matters addressed in the affidavit or the factual assertions set forth therein. Rather, much like *Mary Free Bed Rehab Hosp v Esurance Prop & Cas Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket No. 370846); slip op at 9, "this evidence sufficiently connects the dots between the amount of the premium paid and the selection of limited PIP coverage such that [the insurer] has shown that the premium paid 'accurately reflects the level of coverage.' " In light of the foregoing, USA adequately demonstrated the rebuttable presumption under MCL 500.3107c(3).

Affirmed.


/s/ Matthew S. Ackerman
/s/ Mariam S. Bazzi
/s/ Andrew J. Lievense